UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYBERLUX CORPORATION,<br><br>         Plaintiffs,<br><br>  -against-<br><br>AJW PARTNERS, LLC, AJW OFFSHORE, LTD.,<br>AJW QUALIFIED PARTNERS, LLC and NEW<br>MILLENNIUM CAPITAL PARTNERS II, LLC,<br><br>         Defendant. | 07 Civ. 7808 (DAB)<br><br>DECLARATION |

  COREY RIBOTSKY swears under the penalties of perjury, pursuant to 28 U.S.C. §1746, that:

  1. I am the executive with responsibility for managing plaintiff New Millennium Capital Partners II, LLC ("NMCP"), which is a limited liability company. I submit this declaration on personal knowledge.

  2. Gary Post was a member of NMCP when this case was filed in September 2007, and appeared in our records as a Nevada resident. Mr. Post became a member when NMCP was founded in 2000. He continues as a member today, also as a resident of Nevada. I have annexed as Exhibit A, a copy of his original subscription for a membership interest, which I have redacted to eliminate confidential personal information. I have annexed as Exhibit B, a copy of the change of address notice that NMCP received from Mr. Post in late 2006.

Dated: September 17, 2007

                  _____
                     COREY RIBOTSKY

552619-1

# Exhibit A

# NEW MILLENNIUM CAPITAL PARTNERS II, LLC

## SUBSCRIPTION AGREEMENT

*Gary M. Post*
*Personal Acct.*

11903-00003/717258.1

NEW MILLENNIUM CAPITAL PARTNERS II, LLC

SUBSCRIPTION AGREEMENT

ARTICLE I

PURCHASE OF MEMBERSHIP INTEREST

1.01   Subscription. The undersigned ("Subscriber") hereby subscribes (the "Subscription") to a limited liability company membership interest in the amount set forth as the "Initial Capital Contribution" on the signature page hereto ("Interest") in New Millennium Capital Partners II, LLC (the "Company"), a limited liability company formed under the laws of the State of New York, with offices at 1670 Old Country Road, Suite 112, Plainview, New York 11803. This subscription shall become effective when it has been duly executed by Subscriber and the subscription agreement has been accepted and agreed to by First Street Manager II, LLC, the manager of the Company (the "Manager").

1.02   Receipt of Memorandum Acknowledged. Subscriber acknowledges receipt of a copy of the Confidential Private Placement Memorandum dated October 22, 1999 (the "Memorandum") and the Company's Operating Agreement dated as of May 7, 1999 ("Operating Agreement").

SUBSCRIBER ACKNOWLEDGES THAT SUBSCRIBER IS ACQUIRING THE INTEREST AFTER INVESTIGATION OF THE COMPANY AND ITS PROSPECTS AND THAT NO OFFER OR SOLICITATION HAS BEEN MADE TO SUBSCRIBER EXCEPT THROUGH THE MEMORANDUM. SUBSCRIBER FURTHER ACKNOWLEDGES THAT SUBSCRIBER IS NOT RELYING UPON ANY REPRESENTATION MADE BY ANY PERSON EXCEPT AS CONTAINED IN THE MEMORANDUM.

1.03   Payment For Subscription. Subscriber agrees that the contribution to the Company for the amount of Subscriber's subscription is to be made upon submission of this Subscription Agreement.

1.04   Company Right to Accept or Reject Subscription. The Company shall have the right to accept or reject the Subscription, in whole or in part, for any reason whatsoever, including but not limited to the belief of the Manager that Subscriber is not an Accredited Investor (as defined in Regulation D promulgated by the Securities and Exchange Commission under the Securities Act of 1933, as amended (the "1933 Act")).

## ARTICLE II

## REPRESENTATIONS AND WARRANTIES BY SUBSCRIBER AND QUALIFICATION AS AN ACCREDITED INVESTOR

2.01 <u>Representations and Warranties by Subscriber</u>. Subscriber represents and warrants to the Company and Manager, as follows:

(a) Subscriber is acquiring the Interest for Subscriber's own account, as principal, for investment purposes only and not with any intention to resell, distribute or otherwise dispose of or fractionalize the Interest, in whole or in part.

(b) Subscriber is an Accredited Investor.

(c) Subscriber has been furnished, has carefully read, and has relied solely (except for information obtained pursuant to paragraph (d) below), on the information contained in the Memorandum and the Operating Agreement, and Subscriber has not received any other offering literature or prospectus, and no representations or warranties have been made to Subscriber by the Manager, or its employees or agents, other than the representations of the Manager set forth herein and in the Memorandum and Operating Agreement.

(d) Subscriber has had an unrestricted opportunity to: (i) obtain additional information concerning the offering of Interests pursuant to the Memorandum (the "Offering"), the Operating Agreement, Interest, the Manager, the Company and any other matters relating directly or indirectly to Subscriber's purchase of the Interest; and (ii) ask questions of, and receive answers from the Manager concerning the terms and conditions of the Offering and to obtain such additional information as may have been necessary to verify the accuracy of the information contained in the Memorandum and the Operating Agreement.

(e) Subscriber has carefully reviewed the various risks of an investment in the Company, including the risks summarized under "CERTAIN RISK FACTORS" in the Memorandum. Subscriber can afford to bear the risks of an investment in the Company.

(f) Subscriber understands that the Interests in the Company cannot be sold, assigned, transferred, exchanged, hypothecated, pledged, or otherwise disposed of or encumbered without the consent of the Manager, which consent may be given or withheld in its sole and absolute discretion, and that no market exists or will exist for the resale of any Interests. Subscriber understands further that withdrawals are restricted. In addition, Subscriber understands that the Interests have not been registered under the 1933 Act, or under any applicable state securities or blue sky laws or the laws of any other jurisdiction, and cannot be resold unless they are so registered or unless an exemption from registration is available. Subscriber understands that there is no plan to register the Interests under any law.

(g) All information that Subscriber has provided concerning Subscriber, Subscriber's financial position and knowledge of financial and business matters is correct and complete as of the date hereof.

(h) Except for __None__ [fill in name of broker -if left blank, Subscriber has not dealt with a broker], Subscriber has not dealt with a broker in connection with the purchase of the Interest and agrees to indemnify and hold the Manager and the Company harmless from any claims for brokerage or finder's fees in connection with the transactions contemplated herein.

(i) Subscriber is not relying on the Manager or the Company with respect to any legal, investment or tax considerations involved in the purchase, ownership and disposition of an Interest. Subscriber has relied solely upon the advice of, or has consulted with, in regard to the legal, investment and tax considerations involved in the purchase, ownership and disposition of an Interest, Subscriber's legal counsel, business and/or investment adviser, accountant and tax adviser.

(j) If Subscriber is a corporation, partnership, trust or other entity, it is authorized and qualified to become a member in, and authorized to make its capital contribution to, the Company and the person signing this Subscription Agreement on behalf of such entity has been duly authorized by such entity to do so.

(k) Subscriber is willing and able to bear the economic risks of an investment in the Company for an indefinite period of time. Subscriber has read and understands the provisions of the Operating Agreement.

(l) Subscriber maintains Subscriber's domicile, and is not merely a transient or temporary resident, at the residence address shown on the signature page of this Subscription Agreement.

2.02 Qualification as an Accredited Investor

(Complete subsection (a) or (b), whichever is applicable)

(a) The Subscriber, a natural person, represents and warrants to the Company and the Manager that the Subscriber is an Accredited Investor in that:

(Please check applicable boxes)

i. The Subscriber has a net worth, or joint net worth with the Subscriber's spouse, at the time of purchase in excess of $1,000,000;

    Yes  [X]    No  [ ]

-3-

ii. The Subscriber has had income in excess of $200,000 in each of the two most recent years or joint income with the Subscriber's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same in the current year.

Yes ☒    No ☐

(b) The Subscriber, if other than a natural person, represents and warrants to the Company and the Manager that the Subscriber is an Accredited Investor in that the Subscriber is:

1. A "bank" as defined in Section 3(a)(2) of the 1933 Act.

2. An "insurance company" as defined in Section 2(13) of the 1933 Act.

3. Any broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

4. An investment company registered under the Investment Company Act of 1940, as amended (the "ICA").

5. A business development company as defined in Section 2(a)(48) of the ICA.

6. A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958.

7. An employee benefit plan within the meaning of Title 1 of the Employee Retirement Income Security Act of 1974 ("ERISA"), (a) whose investment decisions are made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, insurance company or registered investment advisor; or (b) having total assets in excess of $5,000,000; or (c) if self-directed, the investment decisions are made solely by persons that are Accredited Investors.

8. An organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, a corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring an Interest, having total assets in excess of $5,000,000.

9. A trust, with total assets in excess of $5,000,000 not formed for the specific purpose of acquiring an Interest, whose purchase is directed by a sophisticated investor.

-4-

    10.    An entity in which all of the equity owners are Accredited Investors.

Indicate whether you qualify as an Accredited Investor under any of the categories described above.

    A.    Yes_____        No_____

    B.    If yes, place an "x" mark next to the number(s) of the tests under which you qualify as an Accredited Investor.

1\_\_    2\_\_    3\_\_    4\_\_    5\_\_    6\_\_    7(a)\_\_    7(b)\_\_    7(c)\_\_    8\_\_    9\_\_    10\_\_

## ARTICLE III

## MISCELLANEOUS

    3.01    <u>Signature Page to Fund Agreement</u>. By signing below, the Subscriber agrees to all of the terms and conditions of the Operating Agreement and agrees to be bound by the terms and conditions thereof and the Subscriber hereby joins in the execution of the Operating Agreement and hereby authorizes the Manager to attach the original signature page below to the Operating Agreement as a signature page to the Operating Agreement.

    3.02    <u>Amendment of Operating Agreement and Certificate</u>. The parties agree to execute an amendment of the Operating Agreement, and to execute and file an amendment of the Company's Certificate of Formation (the "Certificate"), if required, to conform to and embody the terms and conditions of this Agreement.

    3.03    <u>Addresses and Notices</u>. The address of each party for all purposes shall be the address set forth on the first page of this Agreement or on the signature page annexed hereto, or such other address of which the other parties have received written notice. Any notice, demand or request required or permitted to be given or made hereunder shall be in writing and shall be deemed given or made when delivered in person or when sent to such party at such address by registered or certified mail, return receipt requested.

    3.04    <u>Titles and Captions</u>. All Article and Section titles or captions in this Agreement are for convenience only. They shall not be deemed part of this Agreement and do not in any way define, limit, extend or describe the scope or intent of any provisions hereof.

    3.05    <u>Assignability</u>. This Agreement is not transferable or assignable by Subscriber.

    3.06    <u>Pronouns and Plurals</u>. Whenever the context may require, any pronoun used herein shall include the corresponding masculine, feminine or neuter forms. The singular form of nouns, pronouns and verbs shall include the plural and vice versa.

3.07   Further Action. The parties shall execute and deliver all documents, provide all information and take or forbear from taking all such action as may be necessary or appropriate to achieve the purposes of this Agreement. Each party shall bear its own expenses in connection therewith.

3.08   Applicable Law. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware with regard to Delaware conflict of law rules.

3.09   Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties and their heirs, administrators, successors, legal representatives, personal representatives, transferees and assigns. If Subscriber is more than one person, the obligation of Subscriber shall be joint and several and the agreements, representations, warranties and acknowledgments herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, administrators and successors.

3.10   Integration. This Agreement, together with the Operating Agreement, constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto. No covenant, representation or condition not expressed in this Agreement shall affect or be deemed to interpret, change or restrict the express provisions hereof.

3.11   Amendment. This Agreement may be modified or amended only with the written approval of all parties.

3.12   Creditors. None of the provisions of this Agreement shall be for the benefit of or enforceable by creditors of any party.

3.13   Waiver. No failure by any party to insist upon the strict performance of any covenant, agreement, term or condition of this Agreement or to exercise any right or remedy available upon a breach thereof shall constitute a waiver of any such breach or of such or any other covenant, agreement, term or condition.

3.14   Rights and Remedies. The rights and remedies of each of the parties hereunder shall be mutually exclusive, and the implementation of one or more of the provisions of this Agreement shall not preclude the implementation of any other provision.

3.15   Counterparts. This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the original or the same counterpart.

3.16   Indemnification. Subscriber understands that the offer of the Interests to subscribe was made in reliance upon Subscriber's representations and warranties set forth in ARTICLE II above. Subscriber agrees to provide, if requested, any additional information that may be requested by the Manager to determine the eligibility of Subscriber to purchase the Interest. Subscriber hereby agrees to indemnify the Company, Manager and each of their respective affiliates and to defend and hold each of them harmless from and against any loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) due to or arising out of a breach of any representation, warranty or agreement of Subscriber contained in this Subscription Agreement or in any other document provided by Subscriber to the Company, Manager and

each of their respective affiliates, and to defend and hold each of them harmless against all losses, claims, damages, liabilities, costs or expenses (including reasonable attorneys' fees) arising as a result of the sale or distribution of the Interest or any part thereof by Subscriber in violation of the 1933 Act, other applicable law or the Operating Agreement or any misrepresentation or breach by Subscriber with respect to the matters set forth herein. In addition, Subscriber agrees to indemnify the Company, Manager and each of their respective affiliates and to defend and hold each of them harmless from and against, any and all loss, claim, damage, liability, cost or expense (including reasonable attorneys' fees) to which they may be put or which they may incur or sustain by reason of or in connection with any misrepresentations made by Subscriber with respect to the matters about which representations and warranties are required by the terms of this Subscription Agreement, or any breach of any such warranties or any failure to fulfill any covenants or agreements set forth herein or included in the Memorandum or Operating Agreement. Notwithstanding any provisions of this Subscription Agreement, Subscriber does not waive any rights granted to it under applicable securities laws.

-7-

IN WITNESS WHEREOF, Subscriber has executed this Subscription Agreement on this ___ day of ___, ___

[THIS PAGE SHALL ALSO CONSTITUTE A SIGNATURE PAGE TO THE OPERATING AGREEMENT]

REDACTED
Social Security or Employer Identification Number of Subscriber

Gary M. Post
Print Name of Subscriber

Signature for Individual Subscribers:

/s/ Gary Post
Signature of Subscriber

Signature for Subscriber Other than Individual:

By: _____
Signature of Authorized Signatory

_____
Signature of Subscriber, if Joint

_____
Print Name and Title of Authorized Signatory

Mailing Address of Subscriber:

Box 24976
Street

Los Angeles    CA    90024
City    State    Zip Code

Residence or Business Address of Subscriber:
c/o Ambient Advisors
1801 Century Park East
Suite 1133
Street

Los Angeles,    CA    90067
City    State    Zip Code

Initial Capital Contribution: REDACTED

Method of Subscription: ☒ Wire Transfer    ☐ Check

FOREGOING SUBSCRIPTION ACCEPTED:

New Millennium Capital Partners II, LLC
By: First Street Manager II, LLC, Manager

By: /s/ _____

## Exhibit B

**GARY M. POST
BOX 92
ZEPHYR COVE, NV 89448**

## CHANGE OF ADDRESS NOTICE – EFFECTIVE IMMEDIATELY

December 21, 2006

New Millennium Capital Partners II, LLC
1044 Northern Boulevard
Suite 302
Roslyn, NY 11576

Re: Partner Account 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   Gary Post

Please be advised that I have changed my address for the above reference account effective immediately.

The OLD address is:

P.O. Box 24976
Los Angeles, CA 90024

The NEW address is:

P.O. Box 92
Zephyr Cove, NV  89448
775-588-1842 or 310-663-9090

Please send all correspondence to the new address shown in green above.

Sincerely,

Gary M. Post