UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYBERLUX CORPORATION,

                          Plaintiff,

          -against-

AJW PARTNERS, LLC, AJW OFFSHORE, LTD,
AJW QUALIFIED PARTNERS, LLC, and NEW
MILLENNIUM CAPITAL PARTNERS II, LLC,

                      Defendants.

Case No. 07-CV-7808 (DAB)

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Defendants AJW Partners, LLC, AJW*
*Offshore Ltd., AJW Qualified Partners, LLC,*
*and New Millennium Capital Partners II, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

Table of Contents

Preliminary Statement.................................................................................................................1

Factual Statement........................................................................................................................2

    The Parties .............................................................................................................................2

    Cyberlux's Sale of Convertible Notes in 2004 .....................................................................3

    Cyberlux's Sale of Additional Convertible Notes ................................................................4

    Cyberlux's Default on the Notes...........................................................................................5

    The Complaint .......................................................................................................................5

Argument .....................................................................................................................................7

    I       THE COURT SHOULD DISMISS PLAINTIFF'S
             SECURITIES-FRAUD CLAIMS....................................................................7

             A.      The Standards For Dismissal ....................................................................8

             B.      Cyberlux Does Not Have Standing to
                    Prosecute Its Market-Manipulation Claim.................................................9

             C.      Cyberlux's Securities-Fraud Claims Do Not Satisfy
                    the Pleading Requirements of the PSLRA and Rule 9(b)..........................10

                  1.      The Complaint Fails to Allege any Facts
                        to Give Rise to a "Strong Inference" of Scienter...........................11

                  2.      The Complaint Fails to Allege Fraud with Particularity................14

    II     THE COURT SHOULD DISMISS THE DECLARATORY
             JUDGMENT CLAIM OR AWARD DEFENDANTS
             JUDGMENT ON THE PLEADINGS ................................................................17

             A.      Cyberlux Fails to Plead a Valid Declaratory-Judgment Claim.................17

              B.      Alternatively, the Court Should Award Judgment on the Pleadings .........18

    III    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
             JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS........................19

    IV    THE COURT SHOULD DISMISS PLAINTIFF'S
             STATE-LAW CLAIMS......................................................................................20

Conclusion .................................................................................................................................25

Defendants, by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, submit this memorandum of law in support of their motion to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>Preliminary Statement</u>

In September 2004, defendants first loaned money to Cyberlux Corporation ("Cyberlux"), receiving $1.5 million in secured convertible notes. For three years thereafter, defendants continued to advance funds to this small technology start up, purchasing notes on similar terms. The millions of dollars that defendants loaned, nearly all of which remain unpaid, kept Cyberlux alive while its management struggled to develop marketable products.

In August 2007, Cyberlux defaulted under its loans by rejecting defendants' attempts to convert unpaid principal into shares of common stock. Notwithstanding debts to defendants in excess of $5 million, Cyberlux struck pre-emptively, suing here on the theory that it had been fraudulently induced to borrow funds which it now proposes to retain without repayment. The Complaint asserts two federal claims, one for securities fraud under Section 10(b) of the Securities Exchange act of 1934 (the "1934 Act"), 15 U.S. § 78j(b), and one for declaratory relief on the same theory; it also asserts nine counts of state-law tort and contract claims.

As set forth below, Cyberlux's vague fraud claims fall far short of the heightened pleading requirements imposed by the PSLRA, 15 U.S.C. § 78u-4(b). The holding in *ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007), is on point, dismissing similar claims by a borrower who sought to avoid its debts with vague theories of short selling and market manipulation. Cyberlux's declaratory judgment claim also fails to the extent that it rests upon the same deficient securities fraud claim. To the extent that it questions the legality of defendants' convertible notes, the holding in *ATSI Communications* makes clear that they are

valid and legal.  Once the federal claims are dismissed, the Court should decline to exercise

supplemental jurisdiction over the myriad state-law claims under 28 U.S. § 1367(c)(3).  The

accompanying declarations establish the lack of diversity of citizenship under 28 U.S.C.

§ 1332(a).

It is apparent that Cyberlux's frivolous securities claims, asserted in direct contravention

of *ATSI Communications,* were filed solely to avoid repayment of its debts once its business

proved viable.  After the Court dismisses the Complaint, it should make a finding that plaintiff is

liable for sanctions under the PSLRA.

### Factual Statement

The facts set forth below are from the Complaint in this matter, the Declaration of

Thomas J. Fleming, Jr., and the exhibits thereto.  On the lack of diversity jurisdiction, defendants

also submit the Declarations of Corey Ribotsky, the manager of plaintiff New Millennium

Capital Partners II, LLC ("NMCP") and Gary Post, a member of NMCP and resident of Nevada.

#### The Parties

Defendants are all investment funds, based in Roslyn, New York, that loaned money to

plaintiff Cyberlux over a three-year period.  (Compl. ¶¶ 6-9)

Plaintiff Cyberlux is a corporation organized under the laws of the State of Nevada, with

its principal place of business in Durham, North Carolina.  (Compl. ¶ 5)  Cyberlux designs,

manufacture and sells light-emitting diode lighting systems.  Its shares trade publicly under the

symbol "CYBL."  (Compl. ¶ 17)  Since the end of 2003, Cyberlux has reported minimal

revenues and an average annual loss of more than $7 million per year.  (Fleming Dec. ¶¶ 6, 8 &

9, Exs. D, F & G)  According to its press releases, its products have now gained market

acceptance and it expects to have $3.7 million in revenue in 2007.  (Fleming Dec. Ex. I)

<u>Cyberlux's Sale of Convertible Notes in 2004</u>

To accomplish the first loan from defendants, Cyberlux entered into a Securities Purchase Agreement in September 2004 under which Cyberlux issued Callable Secured Convertible Notes (the "Notes") in the aggregate principal amount of $1,500,000.  (Compl. ¶¶ 19-20)

Each Note was convertible into Cyberlux common stock.  Cyberlux also agreed that defendants could sell immediately any and all Cyberlux shares that they might receive upon conversion of the Notes or exercise of warrants.  The Securities Purchase Agreement states that "the Buyer does not agree to hold any of the Securities for any minimum or other specific term and reserves the right to dispose of the Securities at any time in accordance with or pursuant to a registration statement or an exemption under the 1933 Act."  (Compl. Ex. A § 2(a))  In the Securities Purchase Agreement, Cyberlux also acknowledged that the transaction was at arm's length, and that "no Buyer is acting as a financial advisor or fiduciary to the Company (or in any similar capacity) with respect to this Agreement and the transactions contemplated hereby . . . ." (Compl. Ex. A § 3(o))

At the same time, the parties entered into a series of related agreements including a Security Agreement, an Intellectual Property Security Agreement, a Registration Rights Agreement and Warrant Agreements.  (Compl. ¶ 22)

The Notes provide, *inter alia*, that plaintiffs are not entitled to receive shares of common stock upon a conversion if the conversion "would result in beneficial ownership by the Holder and its affiliates of more than 4.99% of the outstanding shares of Common Stock . . . ."  (Fleming Dec. ¶ 3 Ex. A Art. 1.1)  Cyberlux acknowledged that "although the Securities may not be converted and/or exercised into more than 4.99% of our outstanding common stock at any point in time, the Securities may be converted and/or exercised, sold by the holder and then the remainder of their holdings may be converted or exercised.  Furthermore, this limit may be

waived resulting in there being no upper limit on the number of shares that the Company may be required to issue . . . which may result in significant downward pressure on the price of the common stock as the selling stockholder converts and sells material amounts of our common stock . . . ."  (Fleming Dec. ¶ 4; Ex. B)  In public filings, Cyberlux has also acknowledged that, although defendants are not entitled to own more than 4.9% of its common stock at any one time, this limit would not prevent defendants "from converting and/or exercising some of their holdings and then converting the rest of their holdings.  In this way, [defendants] could sell more than this limit while never holding more than this limit."  (Fleming Dec. ¶ 9 Ex. G p. 31)

Cyberlux's Sale of Additional Convertible Notes

Since that first transaction, plaintiffs have purchased approximately $4.62 million of additional Notes from Cyberlux between April 2005 and July 2007 (Compl. ¶ 20)  (Compl. ¶ 20) Each of those transactions involved Notes with similar terms, memorialized in agreements of identical form.  (Compl. ¶ 21)

In later transactions, Cyberlux reaffirmed defendants' right to resell shares immediately upon conversion.  In an amendment to a registration statement, Cyberlux disclosed that "all of the shares issuable upon conversion of the secured convertible notes and upon exercise of our warrants, may be sold without restriction."  (Fleming Dec. ¶ 7 Ex. E p. 5)  Cyberlux further acknowledged that such sales "may adversely affect the market price of our common stock," and that, because the number of shares of common stock issuable upon conversion of the Notes "may increase if the market price of our stock declines," its "obligation to issue shares upon conversion of our secured convertible notes is essentially limitless."  (Fleming Dec. ¶ 7 Ex. E p. 5) Cyberlux also disclosed publicly that plaintiffs' conversion of the Notes "may result in substantial dilution to the interests of other stockholders since the selling stockholders may

4

ultimately convert and sell the full amount issuable on conversion." (Fleming Dec. ¶ 7 Ex. E p. 6)

In a Stock Purchase Agreement executed in April 2005 for one of those transactions, defendants agreed not to sell short any of Cyberlux's common stock while any of the Notes remain outstanding, and in no event less than two years from the date of that agreement. (Compl. Ex. B § 4(o))  The subsequent Stock Purchase Agreements between Cyberlux and defendants contain the same language.  (*e.g.*, Compl. Ex. J § 4(m))

Cyberlux's Default on the Notes

The Notes define as an "Event of Default," *inter alia*, Cyberlux's failure to timely honor, or threaten that it will not honor, a notice of conversion.  (Fleming Dec. ¶ 3 Ex. A § 3.2) Cyberlux concedes that before commencing this action it defaulted on the Notes — and thereby breached its agreements with defendants as well — by refusing to honor defendants' notices of conversion.  (Compl. ¶ 38)

The Complaint

On September 7, 2007, plaintiff served its Summons and Complaint (the "Complaint"), which asserts a claim for securities fraud and a declaration that its agreements with plaintiffs are void under the federal securities law.  The Complaint also asserts nine state-law claims sounding in tort and breach of contract.

The Complaint's federal securities fraud claim is based on two theories.  First it charges that defendants made three misrepresentations that induced Cyberlux to borrow funds.  The first alleged misrepresentation is that "Defendants were negotiating in good faith and making 'representations and warranties' that were 'true and correct in all material respects'." (Compl. ¶ 27)  The second alleged misrepresentation is that "Defendants were long-term investors interested in supporting Cyberlux's present and future interests" who "would in no way act to

5

prejudice Cyberlux or damage the value of its stock, including expressly agreeing that it would not effect 'short sales'." (Compl. ¶ 28)  The third alleged misrepresentation is that "Defendants would limit conversions 'to no more than 4.99% of the outstanding shares of [Cyberlux's] Common Stock'." (Compl. ¶ 28)

The Complaint does not, however, identify the person or persons who made the alleged misrepresentations, or when or where they were made.  The substance of the alleged misrepresentations is addressed in the parties' agreements and Cyberlux's public disclosures, which contain contradictory recitals.

The Complaint seeks to bolster its misrepresentation claim with the charge that defendants engaged in an "elaborate securities fraud scheme," involving alleged market manipulation.  (Compl. p. 8)  According to the Complaint, this scheme was to "manipulate the Cyberlux stock price downwards by short sales and dumping."  (Compl. ¶ 31)  As to defendants' alleged "short selling trading strategy," the Complaint alleges that, upon conversion of their Notes, defendants obtained "huge amounts of Cyberlux common stock at substantial discounts, covering their short positions and reaping huge profits."  (Compl. ¶ 36)  Contradicting its own charge of rapid selling, the Complaint also alleges that defendants "may" have simultaneously accumulated more than 5% of Cyberlux's outstanding common stock, or made an attempt, plan, or decision to do so.  (Compl. ¶¶ 38, 71-72).

Plaintiff's allegations are made without specifics.  The Complaint does not allege how many shares defendants shorted, when they allegedly did so, when the market price of Cyberlux's shares decreased, by how much it decreased, or that defendants actually owned 5% or more of Cyberlux.  Nor does it explain how many shares defendants actually issued or how they "may" have accumulated more than 5%.  No time, place, amount, or data is given at all regarding

the alleged "short sales and dumping."  Cyberlux alleges that defendants' "scheme" occurred

with other companies, but no companies are identified.  (Compl. ¶ 44)

Argument

I

THE COURT SHOULD DISMISS PLAINTIFF'S<br>SECURITIES-FRAUD CLAIMS

In its First Claim, Cyberlux asserts two distinct but factually related federal securities-

fraud claims, both purportedly under Section 10(b) of the 1934 Act.  One claim alleges that

defendants made misrepresentations that fraudulently induced Cyberlux to sell them Notes and

warrants.  (Compl. ¶¶ 49, 51)  To state a claim for relief under § 10(b) for fraud by

misrepresentation, a plaintiff must allege that the defendant "(1) made misstatements or

omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of

securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate

cause of their injury."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (citation

omitted).

The other claim alleges that defendants manipulated the market for Cyberlux stock

through alleged short-selling.  (Compl. ¶¶ 50)  "Market manipulation requires a plaintiff to allege

(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market

free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6)

furthered by the defendant's use of the mails or any facility of a national securities exchange."

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007).  As shown

below, these claims fail for lack of standing, for failure to allege facts giving rise to a strong

inference of fraud, and for failure to plead fraud with particularity.

7

A.    <u>The Standards For Dismissal</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move for dismissal of

a cause of action for "failure to state a claim upon which relief can be granted."  For purposes of

a motion to dismiss, a complaint is deemed to include:

> any written instrument attached to it as an exhibit or any
> statements or documents incorporated in it by reference, see
> *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989), as well as public
> disclosure documents required by law to be, and that have been,
> filed with the SEC, *see Kramer v. Time Warner, Inc.,* 937 F.2d
> 767, 774 (2d Cir. 1991), and documents that the plaintiffs either
> possessed or knew about and upon which they relied in bringing
> the suit, *see Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d
> 42, 47-48 (2d Cir. 1991).

*Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

truth of, and draw all reasonable inferences from, the facts as pleaded and any supporting

exhibits.  *See, e.g., Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

A conclusory pleading without sufficient supporting facts will not pass muster under Rule

12(b)(6).  "Mere conclusory allegations without factual support are insufficient to survive a

motion to dismiss."  *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp.

2d 289, 292 (S.D.N.Y. 2002); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70

(2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual

assertions fails even the liberal standard of Rule 12(b)(6)").

The United States Supreme Court recently reinforced these standards by adopting a

standard of plausibility that trial courts must apply to a complaint when considering a motion to

dismiss under Rule 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955,

1964-65 (2007), the Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

8

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The Supreme Court summarized its holding by stating that a court must dismiss a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

      B.    Cyberlux Does Not Have Standing to
               Prosecute Its Market-Manipulation Claim

Before determining whether the Complaint states claims upon which relief may be granted, the Court must determine as a threshold jurisdictional matter if the Complaint alleges facts sufficient to establish Cyberlux's standing to bring those claims. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91-96 (1998). "[S]tanding, like other jurisdictional inquiries, 'cannot be inferred argumentatively from averments in the pleadings, ... but rather must appear affirmatively in the record ...," so that, on a motion to dismiss, "it is the burden of the party [asserting standing to sue] ... clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 218 (S.D.N.Y. 2005), *quoting Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994), *quoting in turn FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

A corporation does not have standing to sue under Section 10(b) for alleged manipulation of the market in its own stock. In *GAF Corp. v. Milstein*, 453 F.2d 709, 721-22 (2d Cir. 1971), the Second Circuit affirmed the district court's dismissal of a corporation's Rule 10b-5 claim for alleged manipulation of its stock for lack of standing, which is restricted to buyers or sellers of

securities.  The Court reviewed its precedents on that issue and explained that it "has steadfastly refused to extend the reach of 10b-5 to give standing to an issuer."  *Id*. at 721 (citations omitted).

Here, Cyberlux alleges in its market-manipulation claim that "Defendants manipulated downward the stock price of Cyberlux by short selling Cyberlux stock . . . ."  (Compl. ¶ 50) Nowhere does Cyberlux allege that it was a buyer or seller of its own stock during any time when defendants' alleged manipulation affected the share price.  In other words, Cyberlux is suing in its capacity as an issuer of the allegedly manipulated stock.

This pleading prevents Cyberlux from establishing standing to bring its claim for alleged market manipulation under Section 10(b).  *See generally, GAF v. Milstein, supra*.  The Court should, therefore, dismiss that claim for lack of standing.

C.      Cyberlux's Securities-Fraud Claims Do Not Satisfy the Pleading Requirements of the PSLRA and Rule 9(b)

The Complaint's vague and generalized allegations of wrongdoing are fatal.  "Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, § 78u-4(b)(2).'"  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499, 2508 (2007).  The PSLRA's heightened "strong inference" standard for pleading scienter also applies to claims for market manipulation under Rule 10b-5. *ATSI Comms., Inc.*, 493 F.3d at 102.

Rule 9(b) of the Federal Rules of Civil Procedure, which requires that in a pleading "the circumstances constituting fraud or mistake shall be stated with particularity," applies to claims for securities fraud.  "A securities fraud complaint based on misstatements must (1) specify the

10

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at

99, *citing Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). "Allegations that are conclusory

or unsupported by factual assertions are insufficient. *Id*., *citing Luce v. Edelstein*, 802 F.2d 49,

54 (2d Cir. 1986). "Because a claim for market manipulation is a claim for fraud, it must be pled

with particularity under Rule 9(b)." *Id*. at 101-02.

1.    The Complaint Fails to Allege any Facts to
Give Rise to a "Strong Inference" of Scienter

In *Tellabs*, the Supreme Court established the following "prescriptions" for applying the

PSLRA's "strong inference" standard on a Rule 12(b)(6) motion to dismiss a Section 10(b)

action: (i) "courts must accept all factual allegations in the complaint as true"; (2) "courts must

consider the complaint in its entirety, as well as other sources courts ordinarily examine when

ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice"; and (3) "in

determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must

take into account plausible opposing inferences." *Tellabs, Inc.*, 127 S.Ct. at 2509.

The Court summarized its holding as follows: "Under our construction of the 'strong

inference' standard, a plaintiff is not forced to plead more than she would be required to prove at

trial. A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an

inference of scienter *at least as likely as* any plausible opposing inference. Yet the inference of

scienter must be more than merely 'reasonable' or 'permissible' — it must be cogent and

compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if

a reasonable person would deem the inference of scienter cogent and at least as compelling as

any opposing inference one could draw from the facts alleged." *Id*. at 2513.

11

Here, the Complaint does not satisfy the "strong inference" standard for two reasons. First, the Complaint does not plead any "particular connection between the negative reaction of the stock price and anything the defendants did." *See, ATSI Comms. Inc.*, 493 F.3d at 103-04.  In *ATSI*, the complaint attempted to draw inferences of fraudulent market manipulation from trading records and stock prices.  *Id*.  The Second Circuit rejected that approach, calling it "too speculative, even on a motion to dismiss."  *Id*. at 104.  At bottom, the complaint in *ATSI* failed to allege scienter because "[n]owhere does ATSI particularly allege what the defendants did — beyond simply mentioning common types of manipulative activity — or state how this activity affected the market in ATSI's stock."  *Id*.  The Second Circuit also held that "[a] strong inference of scienter is not raised by alleging that a legitimate investment vehicle, such as the convertible preferred stock at issue, creates an opportunity for profit through manipulation."  *Id*.

Here, Cyberlux's Complaint does not even attempt to raise inferences of fraud from specific facts or allege any details concerning how defendants' activities affected its share price. Instead, Cyberlux merely alleges fraudulent intent and action without a single supporting fact.

That pleading approach cannot survive a motion to dismiss because the element of scienter is crucial.  As the Second Circuit explained in *ATSI*, the "strong inference" pleading requirement "is particularly important in manipulation claims because in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation."  *Id*. at 102. Because Cyberlux has not alleged any facts that could give rise to a strong inference of scienter, its securities-fraud claims fail.

Second, the most plausible reason for the drop in Cyberlux's share price is that "normal market forces" were at work.  (Compl. ¶ 41)  Cyberlux acknowledged publicly that "all of the shares issuable upon conversion of the secured convertible notes and upon exercise of our

12

warrants, may be sold without restriction." (Fleming Dec. ¶ 7 Ex. E p. 5) Cyberlux further acknowledged that such sales "may adversely affect the market price of our common stock," and that, because the number of shares of common stock issuable upon conversion of the Notes "may increase if the market price of our stock declines," its "obligation to issue shares upon conversion of our secured convertible notes is essentially limitless." (Fleming Dec. ¶ 7 Ex. E p. 5)

Thus, Cyberlux knew that potentially limitless conversion of the Notes was possible, that defendants could sell all converted shares without restriction, and that large-scale conversions would depress its share price. And the Complaint alleges that Cyberlux issued more than 384 million shares to defendants through conversions. (Compl. ¶ 75) In light of the fact that Cyberlux had approximately 30 million shares outstanding in March 2005, approximately 85 million shares outstanding in March 2006, approximately 277 million shares outstanding in May 2007, and approximately 507 million shares outstanding in August 2007, it is easy to understand how Cyberlux's issuance of 384 million additional shares through conversions could reduce Cyberlux's share price in the public market. (Fleming Dec. Exs. D, F, G & H) Moreover, Cyberlux alleges that defendants disposed of those shares. (Compl. ¶ 40) As Cyberlux concedes, its share price "naturally fell because the supply of the Cyberlux stock increased while its demand remained constant." (Compl. ¶ 32)

Furthermore, the allegation that the market's demand for Cyberlux stock "remained constant" is optimistic because Cyberlux is a highly unprofitable business, losing millions of dollars each year on minimal revenue. For example, it lost $9.4 million in 2005 on sales of $54,000, and lost $6.7 million in 2006 on revenues of $485,000. (Fleming Dec. Exs. E & F) In short, the harm alleged in the Complaint is the same one that Cyberlux foresaw could occur due solely to market forces because of the structure of the Note transactions: "significant downward

13

pressure on the price of the common stock . . . ."  (Fleming Dec. Ex. B)  Now that the harm has

occurred, Cyberlux's original explanation for it is far more plausible than the unsupported

allegations of fraud in the Complaint.

Cyberlux's public disclosures further weaken its claim because they show that it could

not have justifiably relied upon the alleged misrepresentations.  Because the agreements permit

defendants to sell all of the converted shares immediately upon conversion, Cyberlux should not

be heard to complain that defendants' sale of "a high volume number of Cyberlux shares"

breached defendants' express promises.  (Compl. ¶ 40)  *See, Brown v. E.F. Hutton Group, Inc.*,

991 F.2d 1020, 1031-33 (2d Cir. 1993) (holding that investors could not establish justifiable

reliance on account executives' alleged assurances of suitability, and thus could not bring

unsuitability claim under securities fraud provisions of Securities Exchange Act, where

executives' statements were contradicted by offering materials sent to investors).  Also, its claim

that defendants promised to hold the shares of common stock is contradicted by the contractual

recital they were free to sell in immediately.

The Court should, therefore, dismiss the First Claim for Relief for failure to allege facts

that give rise to a strong inference of scienter.

2.    The Complaint Fails to Allege Fraud with Particularity

In this case, Cyberlux does not even come close to satisfying the particularity standards

set forth in the PSLRA and in Rule 9(b) that apply to its claims for misrepresentation and market

manipulation.  As to the alleged misrepresentations, the Complaint violates Rule 9(b) because it

does not provide any details concerning the speaker's identity, time, place.  *ATSI*, 493 F.3d at 99.

In addition, Cyberlux engages in impermissible group pleading by alleging throughout the

Complaint that "Defendants" made the alleged misrepresentations.  (Compl. ¶¶ 27-30, 49-51)

*See, e.g. Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)

14

(complaint was properly dismissed as to certain defendants where fraud allegations were

"pleaded against the defendants generally, with little or no specification as to individual roles");

*Rich v. Maidstone Financial Inc.*, 98 Civ. 2569, 2001 WL 286757 at *7 (S.D.N.Y. March 23,

2001) (dismissing Section 10(b) claims because plaintiff's "clumping" defendants together with

general, conclusory allegations of fraud was insufficient to meet the particularity requirements of

the PSLRA and Rule 9(b)).

As to the alleged market manipulation, "a manipulation complaint must plead with

particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the

defendants." *ATSI Comms., Inc.*, 493 F.3d at 102. "General allegations not tied to the

defendants or resting upon speculation are insufficient." *Id.* "This test will be satisfied if the

complaint sets forth, to the extent possible, 'what manipulative acts were performed, which

defendants performed them, when the manipulative acts were performed, and what effect the

scheme had on the market for the securities at issue.'" *Id., citing Baxter v. A.R. Baron & Co.*,

No. 94 Civ. 3913, 1995 WL 600720, at *6 (S.D.N.Y. Oct. 12, 1995).

Cyberlux's market-manipulation claim fails this test because its allegations are uniformly

general and conclusory. The Complaint describes the alleged scheme as follows: defendants sold

Cyberlux stock short, then converted Notes into "huge amounts of Cyberlux common stock,"

which they used to cover their short positions. (Compl. ¶ 36) Allegedly, defendants "masked"

this scheme by using "multiple accounts at numerous brokers to give the appearance that

Cyberlux's stock was experiencing high volume trading and real price volatility under normal

market forces." (Compl. ¶ 41)

The Complaint provides no other details concerning the alleged scheme. It does not

allege which defendants shorted shares, how many shares were shorted, when these events

occurred, when defendants covered their short positions, what the market price of Cyberlux stock was at any time, how that price changed because of short selling, the volume of market selling in Cyberlux stock, or volatility patterns in Cyberlux's share price. Nor does the complaint identify any of the "numerous brokers" at which defendants allegedly opened "multiple accounts." (Compl. 41)

These omissions are fatal under the test set forth in *ATSI Comms., Inc., supra*. In that case, the pleading alleged far more factual details than the Complaint in this action. The plaintiffs in *ATSI Comms., Inc.* made specific allegations concerning "(1) high-volume selling of ATSI's stock with coinciding drops in the stock price, (2) trading patterns around conversion time, (3) the stock's negative reaction to positive news, and (4) volume of trades in excess of settlement during a ten-day period in 2003." *ATSI Comms., Inc.*, 493 F.3d at 102. But the Second Circuit nonetheless agreed that those allegations did not satisfy Rule 9(b) because "ATSI has offered no specific allegations that the defendants did anything to manipulate the market; it relies, at best, on speculative inferences." *Id*. at 103. *A fortiori*, the vague allegations in Cyberlux's Complaint are even more speculative and inferential than those that did not pass muster in *ATSI Comms., Inc*.

Specificity is particularly appropriate here because much of the complaint seeks to recover for sales effected more than two years ago and would be time-barred unless plaintiff could adequately plead "discovery" within the last two years. 15 U.S.C. § 78r(c); 28 U.S.C. § 1658(b). The Court should, therefore, dismiss the First Claim for Relief in its entirety for failure to meet the particularity standards set forth in Rule 9(b) and the PSLRA.

II

THE COURT SHOULD DISMISS THE DECLARATORY JUDGMENT
CLAIM OR AWARD DEFENDANTS JUDGMENT ON THE PLEADINGS

In its Tenth Claim for Relief, Cyberlux seeks a declaration, pursuant to 28 U.S.C. § 2201, that its agreements with defendants are void because they violate federal securities laws. (Compl. ¶¶ 89-91)  Although the Complaint does not cite a federal statute, the Tenth Claim for Relief appears to be one for rescission under Section 29(b) of the 1934 Act.  That section provides in pertinent part that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder, . . . [or] the performance of which involves the violation of, of the continuance of any relationship or practice in violation of any provision of this chapter or of any rule or regulation thereunder, shall be void."  15 U.S.C. § 78cc(b).  Although Section 29(b) uses the word "void," the United States Supreme Court has interpreted that word to mean "voidable at the option of the innocent party."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 387-88 (1970).  It is unclear whether Cyberlux alleges that in light of alleged misrepresentations the agreements are void or that some unspecified contract clause renders them illegal.  In either event, the claim is deficient.

A.    Cyberlux Fails to Plead a Valid Declaratory-Judgment Claim

In *Pompano-Windy City Partners v. Bear Stearns*, 794 F. Supp. 1265, 1288 (S.D.N.Y. 1992), this Court dismissed a Section 29(b) claim as the necessary result of having dismissed the plaintiffs' other securities-law claims, stating that "rescission of a contract pursuant to Section 29(b) is not available without an underlying violation of the substantive provisions of the securities laws."  (*citing National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 206 n. 4 (2d Cir. 1989)).  The Court held that "in the absence of a viable claim that the securities laws were violated, plaintiffs' claims under Section 29 must be dismissed."  *Id.* at 1289.

17

So too here.  As pointed out in Point I above, Cyberlux's securities-law claims in the First Claim for Relief should be dismissed for lack of standing, failure to satisfy the pertinent pleading standards, and failure to allege causation.  If the Court dismisses those claims, there is no longer a predicate for the Tenth Claim for Relief.  In that case, the Court must dismiss the Tenth Claim for Relief as well.

> B.    Alternatively, the Court Should Award Judgment on the Pleadings

To the extent that Cyberlux seeks a declaration that the agreements annexed to its pleading are voidable, the Court should award judgment to defendants pursuant to Rule 12(c), Fed. R. Civ. P.  Cyberlux does not and cannot point to any provision in those agreements that would require either party to commit a crime or contravene public policy.  In *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Civ. 2007), the Second Circuit upheld the legality of similar instruments that provided for limitless conversions, as the conversion price adjusted downward.  The Court observed, "The obvious inference from ATSI's sale of the securities is that these unfavorable terms were necessary to attract investors because ATSI was continuously losing money."  *Id.*, 493 F.3d at 94.  To the extent that plaintiff suggests that the provision in each note limiting conversion to 4.9% is improper, this position was rejected by the Second Circuit in  *Levy v. Southbrook Intern. Inv., Ltd.*, 263 F.3d 10 (2d Cir. 2001).  There, the Court affirmed a similar contractual provision, holding that where a limitation on conversion denies an investor the right to acquire more than a stated percentage of shares, that investor is not, by virtue of holding convertible securities, a beneficial owner of shares in an amount greater than the percentage permitted by the contract.  *Id*. at 12.

18

III

THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFFS STATE-LAW CLAIMS

There is no complete diversity of citizenship. *Handelsman v. Bedford Village Assocs. L.P.*, 213 F.3d 48, 51-52 (2d Cir. 2000).  As a result, the Court's sole basis for subject matter jurisdiction over the state law claim rests upon supplemental jurisdiction.  If the Court dismisses the federal securities-law claims, it should apply 28 U.S.C. § 1367(c)(3) and decline to exercise of supplemental jurisdiction over these claims.

Cyberlux is a citizen both of Nevada, its state of incorporation, and North Carolina, the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  Declarant Gary Post is a member of plaintiff NMCP (Post Dec; Ribotsky Dec.)  Mr. Post's state of domicile is Nevada, and has been for the past year.  (Post Dec.)  Thus, NMCP is deemed a citizen of Nevada for diversity purposes. *See, Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 347-48(7th Cir. 2006).  Accordingly, complete diversity as required by 28 U.S.C. § 1332(a)(1) does not exist in this action.

In two recent related actions, *AJW Partners, LLC, et al. v. RG Global Lifestyles, Inc., et al.*, 07 Civ. 1835(PAC) and *AJW Partners, LLC, et al. v. Bootie Beer Corp.*, 07 Civ. 18365(PAC), Judge Crotty of this Court decided the same diversity issue presented here. (Fleming Dec. Ex. J)  The corporate defendants in those actions, represented by Ernest E. Badway, Esq., the same attorney who represents Cyberlux in this action, had removed them to this Court.  On a motion to remand for lack of subject-matter jurisdiction, Judge Crotty held, citing *Handelsman*, 213 F.3d at 51-52, that incomplete diversity prevented jurisdiction because in each case a member of one of the plaintiff limited liability companies, *i.e.*, the defendants in this case, was a citizen of the same state as the defendant corporation.  (Fleming Dec. Ex. J)  The

19

diversity-related facts here are virtually identical to those in the actions that Judge Crotty

remanded to state court for lack of subject-matter jurisdiction.

Once a plaintiff's federal claims are dismissed early in the proceedings, and complete

diversity between the parties is lacking, federal courts customarily decline to exercise

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  *See, e.g., Martinez v. Simonetti*,

202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state-law claims where no

federal claims remained); *Sedaghatpour v. DoubleClick, Inc.*, 213 F. Supp. 2d 367, 375-76

(S.D.N.Y. 2002).

IV

THE COURT SHOULD DISMISS CYBERLUX'S STATE-LAW CLAIMS

Even if the Court does not dismiss both of Cyberlux's federal claims, and thus leaves a

basis for supplemental jurisdiction over Cyberlux's state-law claims, it should dismiss those

claims on the separate grounds that Cyberlux fails to plead them adequately.  We review each

claim separately.

Common-Law Fraud Claim.  In its Second Claim, Cyberlux alleges that defendants sold

Cyberlux stock short despite their promise in the Securities Purchase Agreement not to do so.

(Compl. ¶¶ 49-50)  This concession — that the alleged misrepresentation is actually a covenant

in a contract — is fatal to the Second Claim for Relief.  Under New York law, a claim of

fraudulent inducement of a contract does not state a cause of action if the acts alleged to

constitute fraud "do not arise from 'circumstances extraneous to, and not constituting elements

of, the contract' and therefore do not represent the breach of 'a legal duty independent of the

contract itself.'"  *Baker v. Norman*, 226 A.D.2d 301, 643 N.Y.S.2d 30, 33 (1st Dep't 1996).  *See

also Fallon v. McKeon*, 230 A.D.2d 629, 646 N.Y.S.2d 109, 110 (1st Dep't 1996) (affirming

dismissal of fraud claim that "fails to allege a breach of duty distinct from that arising from the

20

oral agreement") (citation omitted); *Rubinberg v. Correia Designs, Ltd.*, 262 A.D.2d 474, 692 N.Y.S.2d 172, 173-74 (2d Dep't 1999) (dismissing fraud claim on grounds that "[t]he alleged misrepresentations relating to compensation due pursuant to the contract were not sufficiently distinct from the breach of contract claim to constitute a separate cause of action sounding in fraud") (citations omitted).

The two other misrepresentations alleged in the Complaint also are integral to the contract. The alleged misrepresentation that defendants' "representations and warranties [ ]were 'true and correct in all material respects" (Compl. ¶ 27) refers to defendants' representations and warranties in the Securities Purchase Agreement. (Compl. Ex. A § 2) And the alleged misrepresentation that defendants would limit their conversions of Notes "to no more than 4.99% of the outstanding shares of [Cyberlux's] Common Stock" (Compl. ¶ 28) is from the Notes. (Fleming Dec. Ex. A Art. 1.1) Thus, the Court must dismiss the Second Claim for Relief because defendants' purported misrepresentations sound only in contract.

Furthermore, even if the Court were to construe the Second Claim for Relief as alleging that defendants had no intention to perform their contractual obligations, that claim still would fail. "General allegations that a [defendant] entered into a contract while lacking the intent to perform it are insufficient to state a cause of action for fraud." *Place v. Ginsburg*, 280 A.D.2d 656, 657, 721 N.Y.S.2d 243 (2nd Dep't 2001).

<u>Breach of Fiduciary Duty</u>. The Complaint's Third Claim alleges breach of fiduciary duty. (Compl. ¶¶ 58-66) In general, New York law is well-settled that where parties deal at arm's length in a commercial transaction, no relation of confidence or trust will arise sufficient to create a fiduciary relationship. *CIBC Bank & Trust Co. v. Credit Lyonnais*, 270 A.D.2d 138, 139, 704 N.Y.S.2d 574 (1st Dep't. 2000). In particular, no fiduciary relationship exists between

buyers and sellers of notes. *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 279 (2d Cir. 1975).

      Negligent Misrepresentation. The Complaint asserts a Fourth Claim for negligent misrepresentation. The Complaint does allege any facts to support the existence of a special relationship between Cyberlux and defendants that could give rise to a claim for negligent misrepresentation. (Compl. ¶¶ 58-62) There is no such relationship where, as here, a corporation sells notes in an arm's length transaction governed by a contract. *See*, *Gross v. Empire Healthchoice Assur., Inc.*, 819 N.Y.S.2d 210, 2006 (N.Y.Sup. 2006) (negligent misrepresentation claim will fail in the absence of a separate and independent duty distinct from the contractual relationship between commercial parties).

      Breach of Contract. In its Fifth Claim, Cyberlux alleges that defendants violated contractual provisions that barred defendants from short selling and from owning more than 4.99% of Cyberlux's outstanding shares. (Compl. ¶ 67-72) In its Sixth Claim, Cyberlux alleges that defendants violated the latter provision. (Compl. ¶ 73-78)

      These claims fail because they are purely conclusory. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Fed. R. Civ. P. 8(a)(2). That rule, however, "still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but grounds on which the claim rests." *Twombly*, 127 S. Ct. at 1965 n.3 (citations omitted). The Fifth and Sixth Claims do not meet this standard because they do not contain any facts to support the allegation of a wrongful act by defendants that caused injury.

The Fifth and Sixth Claims also do not allege an essential element of a breach-of-contract claim: that the plaintiff has performed its obligations under the contract.  In *Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit*, 291 A.D.2d 645, 737 N.Y.S.2d 694, 695 (3d Dep't 2002), the Court affirmed a judgment dismissing a breach-of-contract claim"[i]n light of plaintiff's conceded nonperformance of its contract obligations and the absence of any factor excusing performance . . . ."

Breach of the Gelmon Contract.  In its Seventh Claim, Cyberlux alleges that defendants breached Cyberlux's agreement with Mr. Gelmon, a financial consultant.  (Compl. ¶¶ 79-83)  In particular, Cyberlux alleges that in exchange for consideration of $10,000, Mr. Gelmon failed to obtain any capital for Cyberlux.  (Compl. ¶¶ 81-82)  This claim fails because defendants are not parties to the contract between Cyberlux and Mr. Gelmon.  It is axiomatic that "[c]ontract law does not allow the enforcement of a contract claim against a non-party."  *Seneca Beverage Corp. v. Healthnow New York, Inc*., 383 F. Supp. 2d 413, 421 (W.D. N.Y. 2005).

Breach of Covenant of Good Faith and Fair Dealing.  In its Eighth Claim, Cyberlux alleges that defendants' alleged "violations of the federal securities laws, Securities Purchase Agreements, Notes, and other agreements" have breached the implied covenant of good faith and fair dealing in the parties' agreements.  (Compl. ¶ 85)  This claim fails in the first instance because it alleges no more than a list of Cyberlux's defective breach-of-contract claims.  *See, Triton Partners LLC v. Prudential Securities Inc*., 301 A.D.2d 411, 752 N.Y.S.2d 870 (1st Dep't 2003) (affirming dismissal of claim for breach of implied covenant of good faith and fair dealing that "was merely a substitute for a nonviable breach of contract claim") (citation omitted); *accord, Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 803 N.Y.S.2d 14, 15 (1st Dep't 2005).  Cyberlux cannot restyle the alleged "violations" of the parties' agreements as a

23

predicate for the Eighth Claim for Relief.  Similarly, the allegation that defendants violated

federal securities laws is not a viable predicate for this claim because, as demonstrated above,

Cyberlux's securities claims are also defective.

Conversion.  In its Ninth Claim, Cyberlux alleges that "defendants' misrepresentations to

Cyberlux that they would not short sell Cyberlux's common stock constitute conversion of

Cyberlux's notes."  (Compl. ¶ 87)  This allegation betrays a fundamental misunderstanding of

the tort of conversion.  "The two key elements of conversion are (1) plaintiff's possessory right

or interest in the property; and (2) defendant's dominion over the property or interference with it,

in derogation of plaintiff's rights."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d

43, 49-50, 827 N.Y.S.2d 796 (2006).  To establish a claim of conversion, a party must establish

legal ownership or an immediate superior right of possession to the items at issue.  *Modjeska v.

Greer*, 233 A.D.2d 589, 590, 649 N.Y.S.2d 734 (3d Dep't 1996).  Cyberlux cannot maintain a

claim that defendants converted the Notes because it sold the Notes to defendants in negotiated

transactions between commercial parties.

Equitable Relief.  In its Eleventh Claim, Cyberlux seeks an Order, presumably under state

law, enjoining defendants from "short selling Cyberlux common stock and/or exercising their

respective warrants that they immediately sell, which is causing Cyberlux irreparable harm."  As

pointed out above, the Complaint does not allege any facts to support the bald assertion that

defendants have sold Cyberlux stock short.  Thus, there is no basis for an injunction or for any

other claim based upon alleged short selling.  Second, there is no possible equitable basis for

enjoining defendants' contractual right to exercise stock purchase warrants for which they gave

Cyberlux substantial consideration under freely negotiated agreements.  The Court cannot redraft

those agreements simply because defendants may have sold immediately any shares that they

24

552078-3

received from exercise of that Note.  Cyberlux agreed in writing that defendants could sell those shares at any time after receipt, free of obligation to hold them for any length of time.  (Compl. Ex. A § 2(a))  And Cyberlux has acknowledged defendants' contractual right to do so.  In a public filing, Cyberlux disclosed that "all of the shares issuable upon conversion of the secured convertible notes *and upon exercise of our warrants*, may be sold without restriction."  (Fleming Dec. Ex. E p. 5) (emphasis added)

Conclusion

For the reasons set forth above, defendants respectfully request that the Court dismiss the Complaint.  Based upon the Complaint's frivolity, the Court also should make a specific finding under 15 U.S.C. § 78u-4(c)(1) that Cyberlux has violated Fed. R. Civ. P. 11(b) by filing the Complaint, and thus merit sanctions of attorneys' fees and costs under 15 U.S.C. § 78u-4(c)(3)(A)(ii), after first giving them notice and opportunity, pursuant to 15 U.S.C. § 78u-4(c)(2), to submit a response.

Dated: New, York, New York
       September 21, 2007

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

By:     /s/ Thomas J. Fleming
        Thomas J. Fleming (TF 4423)
        Jack M. Kint, Jr. (JK 7947)
        *Attorneys for Defendants AJW Partners, LLC,*
        *AJW Offshore Ltd., AJW Qualified Partners,*
        *LLC, and New Millennium Capital Partners II,*
        *LLC*
        Park Avenue Tower
        65 East 55th Street
        New York, New York 10022
        (212) 451-2300