UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYBERLUX CORPORATION,

                    Plaintiffs,

    -against-

AJW PARTNERS, LLC, AJW OFFSHORE, LTD.,
AJW QUALIFIED PARTNERS, LLC and NEW
MILLENNIUM CAPITAL PARTNERS II, LLC,

                    Defendants.

Case No. 07-CV 7808 (DAB)

ECF CASE

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
IN OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE**

---

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Defendants AJW
Partners, LLC, AJW Offshore Ltd.,
AJW Qualified Partners, LLC, and
New Millennium Capital Partners II, LLC*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

556172-4

Table of Contents

Page

Preliminary Statement ................................................................................................................... 2

Argument ....................................................................................................................................... 2

    I      THE COURT SHOULD DISMISS PLAINTIFF'S FEDERAL CLAIMS .............. 2

          A.     The Court Should Dismiss Cyberlux's Section 10(b) Claims ..................... 2

          B.     The Court Should Dismiss Cyberlux's Claim for a Declaration that Its Agreements with Defendants Are Invalid Under Federal Law .............. 4

    II     THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS ................................................................................................................... 5

          A.     The Court Should Decline to Exercise Supplemental Jurisdiction Over Cyberlux's State-Law Claims ............................................................. 5

          B.     The Complaint Fails to State Common-Law Claims Upon Which Relief Can Be Granted ................................................................................ 5

    III    THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION TO CONSOLIDATE .................................................................................................. 10

Conclusion ................................................................................................................................... 11

Thomas J. Fleming (TF 4423)
Jack M. Kint, Jr. (JK 7947)
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300
Attorneys for Plaintiffs AJW Partners, LLC, AJW Offshore Ltd.,
AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYBERLUX CORPORATION, <br><br> Plaintiffs, <br><br> -against- <br><br> AJW PARTNERS, LLC, AJW OFFSHORE, LTD., AJW QUALIFIED PARTNERS, LLC and NEW MILLENNIUM CAPITAL PARTNERS II, LLC, <br><br> Defendants. | Case No. 07-CV-7808 (DAB) <br><br> ECF CASE |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
IN OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE**

Defendants AJW Partners, LLC, AJW Offshore Ltd., AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC, (collectively, the "Defendants"), by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, submit this reply memorandum of law in further support of their motion to dismiss the Complaint in this action and in opposition to plaintiff Cyberlux Corporation's cross-motion to consolidate this action with Civil Action No. 07-CV-8367, which they removed improperly from New York State Supreme Court.

556172-4

Preliminary Statement

Cyberlux does not address the substance of defendants' arguments for dismissal of the federal claims that are the foundation for this Court's jurisdiction. Nor does Cyberlux attempt to distinguish the controlling precedent demonstrating that its vague claims of "market manipulation" are woefully deficient. As to the scienter element, Cyberlux merely reiterates the conclusory allegations, speculation, and inference that litter the Complaint. In fact, Cyberlux concedes that the Complaint's use of group pleading and its failure to allege the time and place of supposed misrepresentations both violate Rule 9(b).

In defense of supplemental jurisdiction, Cyberlux argues only that defendants have not shown a lack of diversity. That argument inverts the law because Cyberlux has the burden of proving complete diversity. As shown in defendants' moving papers on their motion to remand Civil Action No. 07-CV-8367 to state court, Cyberlux cannot carry that burden.

Argument

I

THE COURT SHOULD DISMISS PLAINTIFF'S
FEDERAL CLAIMS

A.  The Court Should Dismiss Cyberlux's Section 10(b) Claims

   1.  The Complaint Fails to Allege any Facts to
       Give Rise to a "Strong Inference" of Scienter

In seeking dismissal, Plaintiffs showed that the Complaint failed to plead scienter as the PSLRA requires because: (i) the Complaint does not allege facts—as opposed to unsupported conclusions, speculation, and inference—that would demonstrate a connection between the alleged decline in the price of Cyberlux and anything that defendants did; and (ii) the Complaint's allegations are a less plausible explanation for that alleged decline than the potential

2

556172-4

negative consequences of conversion that Cyberlux disclosed in its public filings or Cyberlux's failure to earn a profit over the years.

As to defendants' first argument, Cyberlux does not even attempt to distinguish *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101 (2d Cir. 2007), a case directly on point. Instead, Cyberlux simply reiterates the unsupported conclusions, speculation, and inferences that it alleges in the Complaint. (Plt. Mem. pp. 8-9) But it does not and cannot explain how those allegations can survive the Second Circuit's rejection of an identical speculative pleading in *ATSI Comms., Inc.*, and its directive in that case that "[a] strong inference of scienter is not raised by alleging that a legitimate investment vehicle, such as the convertible preferred stock at issue, creates an opportunity for profit through manipulation." *Id*. at 104.

Cyberlux does not address defendants' second argument in any manner. Nor does it attempt to distinguish *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499, 2508-09 (2007), where the Supreme Court established the requirement that a Court applying the PSLRA's "strong inference" standard on a Rule 12(b)(6) motion "must take into account plausible opposing inferences."

Cyberlux also ignores defendants' argument that it could not have justifiably relied upon the alleged misrepresentations because the agreements permit defendants to sell all of the converted shares immediately upon conversion.

The silence by Cyberlux on those key points speaks volumes. Its federal claims are deficient and should be dismissed with prejudice.

        2.     <u>The Complaint Fails to Allege Fraud with Particularity</u>

Cyberlux also does not address defendants' specific argument that under the rule of *ATSI Comms., Inc*., general allegations of market manipulation, or allegations that rest upon speculation, are insufficient to satisfy Rule 9(b).

3

556172-4

Cyberlux does not attempt to distinguish any of the Rule 9(b) cases cited by defendants. That is unsurprising because the Complaint falls short even under the sole case cited by Cyberlux, *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). In that case, the Second Circuit stated that Rule 9(b) requires, *inter alia*, that a complaint "identify those responsible for the statements" and "state when and where the statements were made." Here, Cyberlux openly concedes defendants' argument that the Complaint engages in impermissible group pleading by alleging throughout that "Defendants" made the alleged misrepresentations. Indeed, Cyberlux apparently embraces group pleading by arguing that "the Complaint identified . . . the party that made those fraudulent statements (Defendants) . . . ." (Plt. Mem. p. 8)

Cyberlux also tacitly acknowledges that the Complaint does not allege when and where "Defendants" made the alleged misrepresentations. Cyberlux does not argue that the Complaint alleges the time of the alleged misrepresentations. And its argument concerning the place where those misrepresentations were made is almost risible. In this context, the word "where" obviously refers to the geographic location where the speaker made misrepresentations. But Cyberlux argues that "Defendants" made the alleged misrepresentations in the "Transaction Agreements." (Plt. Mem. p. 8)

### B. The Court Should Dismiss Cyberlux's Claim for a Declaration that Its <u>Agreements with Defendants Are Invalid Under Federal Law</u>

Cyberlux agrees with defendants that, if the Court dismisses its Section 10(b) claims, it also must dismiss the Complaint's Tenth Claim for a declaration that its agreements with defendants are void because they violate federal securities laws.

4

556172-4

II

THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS

    A.    The Court Should Decline to Exercise Supplemental
           Jurisdiction Over Cyberlux's State-Law Claims

Cyberlux tacitly concedes that if the Court dismisses its federal claims and complete diversity between the parties is lacking, the Court should decline to exercise supplemental jurisdiction over Cyberlux's state-law claims. Cyberlux's sole argument against dismissal of its state-law claims on that basis is that defendants have "provided no support for an absence of diversity jurisdiction . . . ." (Plt. Mem. p. 13)

Cyberlux misapprehends its obligations as a plaintiff. Contrary to Cyberlux's position, defendants have no obligation to prove the absence of diversity jurisdiction. To the contrary, the party asserting jurisdiction—in this case, Cyberlux—must carry the burden of proving complete diversity. *See, e.g.*, *Hill v. Delta Int'l Machinery Co.*, 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005) ("[T]he burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'") (citations omitted). The facts of Mr. Post's Nevada citizenship and Cyberlux's inability to carry its burden of proving complete diversity are covered thoroughly in defendants' briefs on their pending motion to remand Civil Action No. 07-CV-8367 to state court, and defendants will not burden the Court by repeating those briefs here. In further support of dismissal, we submit a Reply Declaration from Mr. Post attesting to his residence and providing his Nevada Drivers license.

    B.    The Complaint Fails to State Common-Law
           Claims Upon Which Relief Can Be Granted

Common-Law Fraud. In defense of this claim, Cyberlux argues that the Complaint alleges a legal duty on defendants' part that is separate from their duty to perform under the contract. (Plt. Mem. p. 13) As to a separate legal duty, Cyberlux argues that defendants had a

5

"duty to refrain from using fraud to induce Cyberlux to enter into the Transaction Agreements." (Plt. Mem. p. 14)

This argument misconstrues the rule cited by defendants. As Cyberlux concedes in another misguided argument, the alleged misrepresentations are found in the "Transaction Agreements." (Plt. Mem. p. 8) Indeed, those misrepresentations are contractual covenants, *e.g.*, the covenant not to sell Cyberlux stock short. Thus, they are not separate from the contracts and cannot serve as the basis for a fraud claim. Cyberlux does not distinguish any of the cases cited by defendants. The footnote in the case that it cites for this argument, *The Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 n.17 (S.D.N.Y. 2005), does not support Cyberlux's notion that defendants' covenants are actionable misrepresentations. It instead distinguishes fraudulent inducement from a breach of a contractual promise, a distinction that Cyberlux does not make.

By citing *The Topps Co.*, Cyberlux may be trying to express its next argument: that the Complaint alleges facts to support a claim for fraudulent inducement on the grounds that defendants did not intend to honor their contractual covenants. (Plt. Mem. p. 14) In putative support of that argument, Cyberlux quotes from the Complaint's allegations of misrepresentation and a fraudulent short-selling scheme. (Plt. Mem. pp. 14-15) That approach fails because, as noted above, those allegations do not satisfy Rule 9(b).

Breach of Fiduciary Duty. Cyberlux concedes defendants' argument that where parties deal at arm's length in a commercial transaction, such as a sale of notes, no relation of confidence or trust will arise sufficient to create a fiduciary relationship. Cyberlux then asserts that such a relationship existed because defendants assured Cyberlux that they were long-term investors. (Plt. Mem. p. 15) Cyberlux offers no legal authority for this assertion. Nor is there

any factual basis for it because, as defendants pointed out in their opening brief, Cyberlux agreed in writing that defendants could sell the Cyberlux shares at any time after receipt, free of obligation to hold them for any length of time, and publicly acknowledged defendants' contractual right to do so. The investment documents set forth the terms of defendants' obligations and could not be modified by vague claims regarding "long term" investments.

Negligent Misrepresentation. Cyberlux concedes the legal rule that its negligent-misrepresentation claim must fail absent a special relationship between it and defendants. Cyberlux then asserts that such a relationship existed for two reasons: (i) defendants assured Cyberlux that they were long-term investors; and (ii) because of "Defendants' unique expertise as investors in small cap companies." (Plt. Mem. pp. 15-16) The first of these assertions, concerning long-term investment, fails for the same reason given immediately above. As to the second assertion, it is not the law that an investor's expertise in a particular category of investment creates a relationship of trust and confidence between the investor and the company that sells him the investment.

Breach of Contract. Cyberlux ignores defendants' argument that the Complaint does not allege that Cyberlux performed its contractual obligations. In attempting to defend its claim for breach of its contracts with defendants, Cyberlux demonstrates only cognitive dissonance. Cyberlux concedes that the Complaint alleges that defendants sold their positions in Cyberlux stock. (Plt. Mem. p. 16) Cyberlux further concedes that under the Notes defendants could at any time own up to 4.99% of its outstanding shares. (Plt. Mem. p. 16) But then it argues that the Complaint's allegations that defendants sold Cyberlux stock support a claim that their holdings exceeded the 4.99% limit. (Plt. Mem. p. 16) This is nonsensical because a shareholder does not *increase* its ownership of shares by *selling* them. If Cyberlux is reading the 4.99% limit as a

restriction on trading volume rather than as a restriction upon the percentage of ownership, as its brief seems to suggest, it is simply wrong about the contract's terms.

Cyberlux displays similar dissonance with respect to its claim for breach of its contract with Mr. Gelmon. Cyberlux concedes that defendants are not parties to that contract. (Plt. Mem. p. 16) Cyberlux argues instead that defendants have "missed the point" because it is claiming breach of a separate contract between Cyberlux and defendants whereby Cyberlux would retain Mr. Gelmon to obtain funding, which Cyberlux contends was "a condition required by Defendants to enter into the Transaction Agreements." (Plt. Mem. p. 16)

This argument makes no sense because the Complaint does not allege a breach of any separate agreement between the parties concerning Mr. Gelmon. If such an agreement existed—which the Complaint does not allege—both sides performed it because defendants entered into the Note transaction and Cyberlux allegedly retained Mr. Gelmon. Instead, as Cyberlux concedes, the alleged breaches are Mr. Gelmon's failure to find capital and his loyalty to defendants. (Plt. Mem. p. 16) Those are breaches by Mr. Gelmon of his contract with Cyberlux, not breaches of any agreement between Cyberlux and defendants.

<u>Breach of Covenant of Good Faith and Fair Dealing</u>. Cyberlux does not respond to defendants' argument that the Court should dismiss this claim because it alleges no more than a list of Cyberlux's defective breach-of-contract claims. Instead, Cyberlux contends that the Complaint's allegations, "if accepted as true, may demonstrate that Defendants, in bad faith and for an improper purpose, manipulated the stock price of Cyberlux for its [sic] own benefit." (Plt. Mem. p. 17) That is not a defense to dismissal on the grounds urged by defendants because it assumes that Cyberlux's breach-of-contract claims will survive this Motion. Moreover, the Complaint attempts to allege that defendants manipulated Cyberlux's stock by short selling.

8

556172-4

That, however, would be a direct breach of contract and thus not cognizable as a breach of the implied covenant of good faith and fair dealing.

<u>Conversion</u>.  Cyberlux concedes the legal rule that this tort requires a plaintiff to "establish their legal ownership or an immediate superior right of possession to the [items at issue]."  *Modjeska v. Greer*, 233 A.D.2d 589, 590, 649 N.Y.S.2d 734, 735 (3d Dep't 1996).  But Cyberlux argues that it has such a right because defendants allegedly defrauded Cyberlux into selling the Notes.  (Plt. Mem. p. 17)  This is nonsensical because defendants cannot be said to have converted Notes for which they paid full face value.

Cyberlux cites no authority to the contrary.  The first case that Cyberlux cites, *Modjeska*, supports defendants' position because in that case the appellate court affirmed denial of a motion for summary judgment on a claim that the defendant had converted shares of corporate stock by transferring them from a trust for his children to his second wife.  *Id*. at 590.  The Court held that the defendant's children could not establish a superior right of possession because the trust was the apparent owner of those shares.  *Id*.  Here, defendants are both the apparent and legal owners of the Notes.

The second case Cyberlux cites, *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288 (S.D.N.Y. 2006), is inapposite because the plaintiff had not sold what he was trying to recover.  Instead, he contributed working capital to a corporation on the understanding that the other two shareholders also would contribute.  *Id*. at 285.  The others, however, recorded their purported contributions as loans and transferred the administration of the company's books to an entity under their control.  *Id*.  Here, in contrast, Cyberlux contributed nothing and is attempting to make off with more than $5 million that it borrowed from defendants.

9

Equitable Relief — Injunction.  Cyberlux ignores defendants' argument that there is no basis for enjoining defendants' contractual right to exercise stock purchase warrants for which they gave Cyberlux substantial consideration under freely-negotiated agreements.  Instead, Cyberlux argues that "this Court's broad equitable powers alone is [sic] sufficient to support Cyberlux's equitable relief claim."  (Plt. Mem. p. 18)  That argument is nonsense because a Court's power cannot be the sole basis for awarding equitable relief.  Something more is required, *i.e.*, properly supported allegations of wrongful conduct that an injunction could redress.

Cyberlux tries to make up for the Complaint's deficiency in that regard by contending that defendants' motion to dismiss this claim is an admission of short selling.  (Plt. Mem. p. 19)  That contention is preposterous because equity does not punish a defendant for pointing out that a request for an injunction is baseless.

III

THE COURT SHOULD DENY PLAINTIFF'S CROSS-MOTION TO CONSOLIDATE

Cyberlux has filed a cross-motion to consolidate this action with defendants' state-court action to recover more than $5 million that they loaned to Cyberlux, which Cyberlux removed improperly to this Court as Civil Action No. 07-CV-8367.  (Plt. Mem. pp. 19-20)  According to Cyberlux, it would be impossible to "imagine a more appropriate situation that calls for consolidation under FRCP 42(a).  (Plt. Mem. p. 20)  Cyberlux adds that "no confusion or prejudice would result from consolidation . . . ."  (Plt. Mem. p. 20)

This cross-motion is, of course, premature while this Motion and defendants' motion to remand Civil Action No. 07-CV-8367 to state court are pending.  Moreover, Cyberlux's ostensible desire to reduce confusion is richly ironic.  So far, Cyberlux has created ample

10

confusion by indulging its delusion that defendants' state-court action is part of this one. In that regard, Cyberlux has filed *under this action's docket number* a pleading styled "Reply to Defendants' Improperly Plead [sic] Counterclaims," which supposedly responds to defendants' state-court complaint. And Cyberlux labeled its opposition to defendants' motion to remand their state-court action with that number as well. These mislabeled filings were deliberate because Cyberlux included footnotes explaining that it was following "proper procedure." Perhaps this cross-motion, albeit premature, signals a dawning realization on Cyberlux's part that the two actions are indeed separate. In any event, this cross-motion will become moot if the Court grants either this Motion or the motion to remand.

## Conclusion

For the reasons set forth above and in their initial memorandum of law, defendants AJW Partners, LLC, AJW Offshore Ltd., AJW Qualified Partners, LLC, and New Millennium Capital Partners II, LLC respectfully request that the Court dismiss the Complaint in this action, issue an Order denying plaintiff Cyberlux Corporation's cross-motion to consolidate this action with defendants' state-court action that Cyberlux has removed improperly to this Court, and grant such other and further relief as this Court deems just and proper.

Dated: New, York, New York
November 5, 2007

          OLSHAN GRUNDMAN FROME
          ROSENZWEIG & WOLOSKY LLP

By:    /s/ Thomas J. Fleming
     Thomas J. Fleming (TF 4423)
     Jack M. Kint, Jr. (JK 7947)
     *Attorneys for Plaintiffs AJW Partners, LLC,*
     *AJW Offshore Ltd., AJW Qualified*
     *Partners, LLC, and New*
     *Millennium Capital Partners II, LLC*
     Park Avenue Tower
     65 East 55th Street
     New York, New York 10022
     (212) 451-2300