USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/17/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CYBERLUX CORP.,

                    Plaintiff,

    -against-                    07 Civ. 7808 (DAB)
                                       ORDER

AJW PARTNERS, LLC, AJW OFFSHORE, LTD.,
AJW QUALIFIED PARTNERS, LLC and NEW
MILLENNIUM CAPITAL PARTNERS II, LLC,

                    Defendants.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    On September 4, 2007, Plaintiff Cyberlux Corp. filed suit against Defendants AJW Partners, LLC, AJW Offshore, Ltd., AJW Qualified Partners, LLC and New Millennium Capital Partners II, LLC. Plaintiff's Complaint contains eleven claims for relief, of which only the first is a substantive claim under federal law. The first claim alleges securities fraud in a violation of section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated pursuant to it (17 C.F.R. § 240.10b-5(b)). The Complaint's tenth claim seeks declaratory relief based on Defendants' alleged securities fraud, pursuant to 28 U.S.C. § 2201. Plaintiff's remaining claims are brought under state law.

    Defendants move to dismiss Plaintiff's securities fraud claim pursuant to Fed. R. Civ. P. 12(b)(6) and further contend that the Court lacks diversity jurisdiction over Plaintiff's

state law claims. Plaintiff opposes the motion and cross-moves to consolidate this action with a related action, 07 Civ. 8367 (DAB), that was removed to this Court on September 26, 2007 from New York State Supreme Court, New York County.[1] For the reasons set forth below, Defendants' Motion to Dismiss the Complaint is GRANTED and Plaintiff's Cross-Motion is DENIED.

BACKGROUND

The Complaint alleges that "[b]eginning on or about September, 2004 to July, 2007, Defendants and Cyberlux entered into several and separate note agreements where Defendants ostensibly provided Cyberlux funding for the sale of convertible notes and warrants, and Defendants then purchased a certain agreed upon number of shares of Cyberlux's common stock (the "Secured Note Agreements") at set prices." (Compl. ¶ 19.) Pursuant to the Secured Note Agreements, each of the Defendants allegedly "induced Cyberlux" into entering ten separate

---

[1] Plaintiff's counsel insists on treating the two separate actions as though they are one, going to lengths that this Court has never seen, such as purposefully mislabeling the papers in the related action with the docket number assigned to this action. Plaintiff's counsel should take note that the Motion to Remand to New York State Supreme Court by the plaintiffs in the related action shall be addressed in a separate order that will be docketed under 07 Civ. 8367 (DAB), and not on the docket for this action.

Securities Purchasing Agreements.  (Id. ¶ 20.)  Plaintiff alleges that "Defendants induced Cyberlux to agree to the foregoing terms by expressly representing that Defendants were negotiating in good faith and making 'representation and warranties' that were 'true and correct in all material respects.'"  (Id. ¶ 27.)  Plaintiff further alleges that Defendants assured it that they "were long-term investors interested in supporting Cyberlux's present and future interests, and repeatedly assured Cyberlux that Defendants would in no way act to prejudice Cyberlux or damage the value of its stock, including expressly agreeing that it would not effect 'short sales.'"  (Id. ¶ 28.)  Plaintiff claims that it also relied upon Defendants' express written representation that "Defendants would limit conversions to 'no more than 4.99% of the outstanding shares of [Cyberlux's] Common Stock.'"  (Id. ¶ 29.)  Defendants, however, allegedly induced Plaintiff to enter in to the several transaction agreements to "perpetuate a predatory securities scheme . . . ."  (Id. ¶ 30.)

The Complaint describes the "predatory securities scheme" allegedly perpetrated by Defendants as "market manipulation" accomplished by means of short sales and dumping.  Plaintiff summarizes the scheme as follows:

> Defendants' scheme involved (and involves) engaging in a short-selling trading strategy.  Defendants purchased registered convertible Cyberlux shares though

> conversion of convertible notes. Upon conversion,
> Defendants obtain huge amounts of Cyberlux common stock
> at substantial discounts, covering their short
> positions and reaping huge profits.

(Id. ¶ 36.) Defendants have allegedly converted hundreds of thousands of notes into hundreds of millions of shares. (Id. ¶ 37.) The profits that Defendants have thereby reaped allegedly "far exceed the amount loaned to Cyberlux." (Id.) Plaintiff alleges that when it discovered Defendants' allegedly illicit scheme -- the Complaint does not indicate when exactly Plaintiff learned of the scheme -- it refused Defendants' requests to convert addition shares under the Parties' agreements. (Id. ¶ 38.) Plaintiff alleges that its action was justified because Defendants may have breached provisions of the Securities Purchase Agreements which limit Defendants' collective ownership of Plaintiff's common stock to no more than 4.9%. (Id.) Plaintiff alleges that it relied upon Defendants' "representations that they would not short sell Cyberlux stock under the terms set forth under controlling [sic] Securities Purchase Agreement, Cyberlux sold to each of the Defendants secured convertible notes and warrants." (Id. ¶ 49.)

Nowhere in the Complaint does Plaintiff specify what the individual Defendants did. Plaintiff does not provide a description of a single incident of the market manipulation

4

activities that Defendants allegedly engaged in.  Plaintiff fails to describe the volume of shares involved in the alleged short-selling or indicate by how much the short-selling reduced its common stock price.  While the Complaint appears to quote generic language from some of the agreements between the Parties -- and even that is not clear -- it also fails to specify whether Defendants' alleged misrepresentations were written or oral and does not indicate when they were allegedly made and by whom they were made.

Defendants point out that the Parties' 2004 Securities Purchase Agreement expressly grants Defendants the right to immediately sell any of Plaintiff's shares that they might acquire pursuant to the agreements between the Parties.  (Compl. Ex. A § 2(a).)  Moreover, Defendants also note that, in a public filing with the Securities and Exchange Commission, dated May 20, 2005, Plaintiff disclosed that its agreements with Defendants "may result in substantial dilution to the interests of other stockholders since the selling stockholders may ultimately convert and sell the full amount issuable on conversion." (Fleming Decl. ¶ 7 & Ex. E at 6.)

DISCUSSION

A.  The Legal Standard

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). On such a motion, the court "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." Id. (citing AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003)). The court therefore "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)). However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), cert. denied, 525 U.S. 1103, 119 S.Ct. 868 (1999)).

Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has explained that Rule 8(a)(2) requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true . . . ." Bell Atlantic v. Twombly, ---U.S.---, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (internal citations omitted). However, under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, ---U.S.---, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citations omitted). Thus, on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" Roth, 489 F.3d at 510 (quoting Bell Atlantic, 127 S.Ct. at 1969). For purposes of a motion to dismiss, a complaint is deemed to include:

> any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, see Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989), as well as public disclosure documents required by law to be, and that have been, filed with the SEC, see Kramer v. Time Warner,

7

>Inc., 937 F.2d 767, 774 (2d Cir. 1991), and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit, see Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000).

B. The Complaint Fails to State a Cause of Action for Under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)

To state a cause of action for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated pursuant to it (17 C.F.R. § 240.10b-5(b)) "'a plaintiff must plead that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused [plaintiff] injury.'"  Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000) (quoting Chill v. General Electric Co., 101 F.3d 263, 266 (2d Cir. 1996)).[2]

---

[2] Rule 10b-5 provides in full:

> § 240.10b-5 Employment of manipulative and deceptive devices.
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
>   (a) To employ any device, scheme, or artifice to defraud,

8

The United States Supreme Court recently clarified the pleading standard that plaintiffs alleging securities fraud claims must meet:

> We emphasize, as well, that under our construction of the "strong inference" standard, a plaintiff is not forced to plead more than she would be required to prove at trial. A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter <u>at least as likely as</u> any plausible opposing inference. At trial, she must then prove her case by a "preponderance of the evidence." Stated otherwise, she must demonstrate that it is <u>more likely</u> than not that the defendant acted with scienter.

<u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, --- U.S. ---, 127 S. Ct. 2499, 2513 (2007) (citing <u>Herman & MacLean v. Huddleston</u>, 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)).

With respect to market manipulation claims, plaintiffs must allege the following: "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market furthered by the defendant's use of the mails or any facility of

---

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

"The scope of Rule 10b-5 is coextensive with the coverage of § 10(b)." <u>See</u> <u>SEC v. Zandford</u>, 122 S.Ct. 1899, 1901 n.1 (2002).

a national securities exchange." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 101 (2d Cir. 2007).

Securities fraud claims must be pled with sufficient specificity under Rule 9(b) of the Federal Rules of Civil Procedure: "'The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based.'" Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000) (quoting Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990). Rule 9(b) requires a party averring fraud or mistake to state with particularity "the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b).

The "particularity requirement" contained in Rule 9(b) is substantial: "'[A] complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" Kelly v. L.L. Cool J., 145 F.R.D. 32, 38 (S.D.N.Y. 1992) (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)); see also DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (same); Keenan v. D.H. Blair & Co., 838 F. Supp. 82, 86 (S.D.N.Y. 1993) (same); Kubin v. Miller, 801 F. Supp. 1101, 1117 (S.D.N.Y. 1992) (same).

In addition, "[w]hen fraud is alleged against multiple

10

defendants, a plaintiff must . . . set[ ] forth separately the acts complained of by each defendant." Double Alpha, Inc. v. Mako Partners, L.P., 2000 WL 1036034 at *3 (S.D.N.Y. 2000); see also T.H.C., Inc., v. Fortune Petroleum Corp., 1999 WL 182593 at *3 (S.D.N.Y. 1999) ("'Courts are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants'") (quoting Scone Investments, L.P. v. American Third Market Corp., 1998 WL 205338 at *4 (S.D.N.Y. 1998))). The requirements of Rule 9(a) are not "satisfied by a complaint in which defendants are clumped together in vague allegations." In re Blech Securities Litigation, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996).

The Complaint fails to adequately plead either a claim for securities fraud or market manipulation with the specificity demanded by Fed. R. Civ. P. 9(b). Plaintiff merely lumps all of the Defendants together and alleges that because a provision of the Transaction Agreement between the Parties warranted that Defendants would not engage in short-selling, it must follow that Defendants' sales of Plaintiff's converted stocks constituted market manipulation and securities fraud. Plaintiff, however, failed to specify a single instance of short-selling in the Complaint, let alone plead any specific facts that would tend to show that Defendants' conduct was intended to defraud Plaintiff or that Defendants' conduct was the cause of Plaintiff's losses.

Moreover, the Court finds Plaintiff's claim of market manipulation and securities fraud implausible given that the Securities Purchase Agreement gave Defendants the right to sell any shares that they obtained through the Parties' stock conversion agreements.  Indeed, Plaintiff's own public disclosures in Securities and Exchange Commission filings tend to demonstrate that Plaintiff was well aware of how the agreements that it had bargained for could potentially affect its common stock price.  Under these circumstances, it appears to the Court that the more plausible inference to be drawn from the allegations contained in the Complaint and from the Parties' moving papers is that the risk that Plaintiff knowingly assumed has come to pass, rather than that Defendants have committed market manipulation or securities fraud.  See Tellabs, 127 S. Ct. at 2508-09.

Accordingly, Defendants' Motion to Dismiss Plaintiff's First Claim for Relief is GRANTED.  Plaintiff's Tenth Claim for Relief, which is tied to its First Claim for Relief, is also DISMISSED.


C.   The Court Lacks Subject Matter Jurisdiction Over the
     Remaining State Law Claims

Plaintiff urges the Court to exercise supplemental jurisdiction over its state-law claims.  Defendants, however, have shown that the Court lacks independent subject matter jurisdiction over those claims because Defendant New Millennium

Capital Partners II, LLC and Plaintiff are both Nevada citizens. Defendants have demonstrated that Gary Post, a member of New Millennium Capital Partners II, LLC, lives in Nevada. (Ribotsky Decl. ¶¶ 1-2 & Exs. A & B.)  Defendants have produced Declarations from Post in which he states that he is a Nevada resident.  (Post Decl. ¶¶ 1-3.)  Post has a valid Nevada drivers license and states that his home address is "325 Seminole Way, Zephyr Cove, Nevada 89448."  (Post Reply Decl. ¶ 2 & Ex. A.)  A limited liability company is deemed to be a citizen of every state where its members are citizens.  See Handlesman v. Bedford Village Associates, L.P., 213 F.3d 48, 51-52 (2d Cir. 2000) (citing Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998)).  Plaintiff brings forth no evidence that Post is in fact a domiciliary of a state other than Nevada.  Plaintiff merely argues that internet searches show that Post has ties to companies that are located exclusively in California.  There is no showing, however, that such a fact is inconsistent with Post's sworn statement that he lives in Nevada.  While it is Plaintiff's burden to prove that complete diversity of citizenship exists between all the Parties to this action, the Court finds that it has failed to meet that burden.

   The Court thus finds that, in the absence of any federal claims, there is no independent subject matter jurisdiction over Plaintiff's state law claims.  Accordingly, because Plaintiff's sole federal claim has been dismissed pursuant to Fed. R. Civ. P.

12(b)(6), the Court DISMISSES the remaining state-law claims.

## CONCLUSION

For the foregoing reasons Defendants' Motion to Dismiss Plaintiff's First Claim for Relief and its Tenth Claim for Relief, pursuant to Fed. R. Civ. P. 12(b)(6), is GRANTED WITH PREJUDICE. Plaintiff's remaining state-law claims are DISMISSED WITHOUT PREJUDICE. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

Dated:   New York, New York
         March 17, 2008

*Deborah A. Batts*
Deborah A. Batts
United States District Judge